BANK ONE MILWAUKEE, N.A., Plaintiff-Respondent,

v.

Linda L. HARRIS, Defendant-Appellant.

Court of Appeals

*No. 96–0903. Submitted on briefs February 4, 1997.—Decided March 11, 1997.*

(Also reported in 563 N.W.2d 543.)

For the defendant-appellant the cause was submitted on the briefs of *Schoone, Fortune, Leuck, Kelley & Pitts, S.C.*, with Linda L. Harris of Racine.

For the plaintiff-respondent the cause was submitted on the briefs of *James L. Adashek* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Linda L. Harris appeals from the trial court order reinstating Bank One, Milwaukee, N.A.'s replevin judgment that required Harris to surrender her car to Bank One, and dismissing her counterclaim[1] for "illegal repossession." Harris challenges the trial court's determinations: (1) that Bank One mailed a notice of right to cure default to her last known address; and (2) that she was in default of her consumer installment agreement despite having become disabled and having made a prompt and valid claim on the disability insurance she had purchased with her agreement. We need not address the trial

---

[1] In explicit terms the trial court order dismissed Harris's affirmative defense; in effect, it also dismissed her counterclaim.

413

court's determination of the mailing of notice[2] because we conclude that, under § 425.103, STATS., Harris was not in default.

The essential factual background is undisputed. On October 2, 1992, Harris bought a car from an auto dealer pursuant to a Wisconsin consumer installment agreement. The agreement, purchased by Bank One, required Harris to make monthly payments of $297.41, due on the sixteenth of each month. In conjunction with and on the same contract financing her car loan, Harris also purchased credit disability insurance to cover her monthly payments in the event she would become disabled.

Harris became disabled as a result of injuries she suffered in a car accident on July 2, 1994. She did not make her July payment. Until the time she became disabled, Harris had been current on her monthly payments except for a $96.92 past due charge that, she contends, "was mistakenly not paid . . . and simply carried over month after month."

In July, Harris informed her credit disability insurer of her accident and disability and, as instructed by the insurer, she also informed Bank One that she would be receiving forms requiring signatures by her and her doctor.[3] Harris received the forms, obtained

---

[2] See Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

[3] Bryan Carlson of Bank One testified that in July 1994, Bank One "knew there was a claim in process." He subsequently testified, however, that the Bank One records of July phone communication with Harris provided "no indication" of whether she had applied for benefits under the disability insurance policy. Later, still, he testified, "We had no idea during July that there was a disability claim pending." Another Bank One employee testified that Harris informed her of the disability and

the signatures, and returned the forms to the insurer as instructed. On July 28, however, Bank One prepared and sent a notice of right to cure default to what it believed to be Harris's last known address.

Harris's disability insurer paid $267.67 of Harris's July payment, an amount the insurer deemed proportionate to the period of Harris's disability. That payment, however, was not received by Bank One until August 16, 1994, one month after the deadline for the July payment.[4]

On September 9, 1994, Bank One filed its replevin action against Harris. Bank One computed Harris's balance by adding the unpaid $297.41 August payment plus delinquency charges of $14.82 to the $96.92 past due. Thus Bank One claimed that, under § 425.103, STATS., Harris was more than one month's payment behind and, therefore, was in "default."

Section 425.103, STATS., provides, in relevant part:

> **(1)** Notwithstanding any term or agreement to the contrary, no cause of action with respect to the obligation of a customer in a consumer credit transaction shall accrue in favor of a creditor except by reason of a default, as defined in sub. (2).

the disability claim number on August 10. Harris testified that she informed Bank One of her disability and her insurance claim on two occasions in July.

[4] The loan agreement provided that a payment was not late if made on or before the tenth day after it was due. The parties dispute whether Harris had a good payment history on this loan. Harris correctly argues, however, that their differing impressions of her payment history are immaterial, given the undisputed fact that she was current, except for the $96.92 past due, at the time she became disabled and made her insurance claim, and at the time Bank One commenced the replevin action.

**(2)** "Default", with respect to a consumer credit transaction, means without justification under any law:

(a) With respect to a transaction other than one pursuant to an open-end plan, 1) if the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates . . . .

It is undisputed that the "interval" of Harris's installment agreement was monthly and that, with the addition of the unpaid July payment to the $96.92 past due, Harris's unpaid balance "exceed[ed] one full payment which . . . remained unpaid for more than 10 days after the scheduled or deferred due dates." Section 425.103(2)(a), STATS. It is also undisputed, however, that if the insurer's payment for July had been credited, Harris's unpaid balance would not have exceeded one full payment and she would not have been in default. The issue, therefore, is whether Bank One could include the unpaid July amount in computing Harris's unpaid balance for the purpose of establishing "default." Although this presents a question of first impression, the answer arrives with clarity and ease when we consider the explicit "purposes and policies" of the underlying statutes.

Section 421.102(1) and (2)(b), STATS., declares, *inter alia*, that Chapters 421 to 427, governing consumer transactions (and including Chapter 424 governing consumer credit insurance), "shall be liberally construed and applied to promote their underlying purposes and policies" including the "[p]rotect[ion of] customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." We conclude that, under the circumstances of this case, it is an

416

unconscionable practice to include an unpaid monthly amount covered by disability insurance in computing the unpaid balance for purposes of establishing "default."

Bank One maintains that the existence of credit disability insurance is irrelevant to the computation of whether a debtor is in default. At the trial, Bryan Carlson, the Bank One "consumer loan collector" responsible for the Harris loan, responded to Harris's counsel's question:

> Q: And what Bank One did instead of waiting for the disability insurer to make payment, the minute there was more than one payment—full payment past due on this account you defaulted her, didn't you?
>
> A: Credit insurance claim or not, she was in legal default on the note.

Bank One concedes, however, that neither the consumer installment agreement nor the disability insurance contract informed Harris that she could be in default for failing to pay the monthly payment that the insurer ultimately would pay. Carlson testified:

> Q: Show me in this contract where it specifically says . . . something to the effect of, "Hey, look, it doesn't matter that you purchased credit disability insurance. Even if you're disabled we can still default you even if it is the obligation of the insurer to pay."
>
> Is there anything in that contract that even remotely resembles that type of notice to Linda Harris?
>
> A: No, it does not.

Carlson, however, then added, "Nor does it preclude her from making payments per the contract even when on disability." Bank One contends, therefore, that Harris was responsible for the payment in July and that then, if she chose, she could seek reimbursement from her insurer. We conclude, however, that although some consumers might decide to proceed in the manner Bank One suggests, all consumers purchasing disability insurance in conjunction with a consumer installment agreement would reasonably expect the insurance to cover their most immediate need—the next monthly payment due—to assure they will not be in default.

Indeed, Bank One conceded this point in the trial court. Carlson testified:

Q: What is the purpose as far as you are concerned of purchasing credit disability insurance?

A: To make payments if one is unable to work due to disability.

Q: In other words, if a person is legitimately medically disabled the entire purpose of this type of insurance that [Harris] paid [$603.15] for is to kick in and pick up the payments during the period of disability, right?

A: Between her and the insurance company, yes.

Q: And if Linda Harris was in fact legitimately medically disabled it would be reasonable for her to expect that this insurance would kick in and pick up the payment, wouldn't it?

A: If the insurance company deemed her claim legitimate and payable.

> Q: Well, that is what I mean. If we assume that she in fact had a legitimate claim, one not subject to question by the insurance company, it would be reasonable for her to assume that the credit disability insurer is going to pick up the payment, right?
>
> A: That would seem reasonable.

Although our statutes do not define "unconscionable," § 425.107(1), and 425.107(3), STATS., generally describe practices related to consumer credit transactions that are "pertinent to the issue of unconscionability." At least two of these are particularly pertinent to circumstances in which a consumer's *disability* triggers the business practice at issue.

■

Section 425.107(3)(a), STATS., states: "That the practice [with respect to a consumer credit transaction] unfairly takes advantage of the lack of knowledge, ability, experience or *capacity* of customers." (Emphasis added.) Section 425.107(3)(d), in part states: "That the practice [with respect to a consumer credit transaction] may enable merchants to take advantage of the *inability* of customers reasonably to protect their interests by reason of *physical* or mental *infirmities* . . . ." (Emphasis added.)

■

The dictionary defines "unconscionable" as that which is "lying outside the limits of what is reasonable or acceptable: shockingly unfair, harsh, or unjust: outrageous." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976). "In construing statutory language the ordinary and accepted meaning of the language must be given effect." *Jadofsky v. Iowa Kemper Ins. Co.*, 120 Wis. 2d 494, 497, 355 N.W.2d 550, 552 (Ct. App. 1984). Under the statutory descriptions of prac-

tices pertinent to the issue of unconscionability, and under the accepted meaning of "unconscionable," we conclude that Bank One's practice was unconscionable.[5]

Accordingly, we hold that, consistent with the mandates of § 421.102(1) and (2)(b), STATS., where a consumer has purchased disability insurance in conjunction with an installment agreement and has promptly informed the insurer of a valid claim, the creditor may not include the amount to be paid by the insurer in the computation of the debtor's unpaid balance to establish default. Therefore, we reverse the trial court order reinstating the replevin judgment and dismissing Harris's counterclaim. We remand for the dismissal of Bank One's claim and for the reinstatement of Harris's counterclaim against Bank One alleging "illegal repossession" in violation of § 425.205, STATS.

*By the Court.*—Order reversed and cause remanded.

[5] In reaching this conclusion we need not articulate a single, precise definition of "unconscionable." Indeed, at times, when courts are "faced with the task of trying to define what may be indefinable," they "perhaps . . . could never succeed in intelligibly doing so" but may respond, as we do here: "[We] know [unconscionability] when [we] see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).